UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

JEAN BAPTISTE EDNER,

                        Plaintiff,                   **MEMORANDUM & ORDER**
                                                              14-CV-00581 (MKB)

              v.

NYCTA-MTA,

                        Defendant.

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Jean Baptiste Edner commenced this action on January 24, 2014, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), alleging employment discrimination against the New York City Transportation Authority-MTA[1] ("NYCTA"). At that time, Plaintiff proceeded *pro se,* and on May 7, 2014, the Court granted Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, dismissed his claims, and granted him leave to file an amended complaint. (Docket Entry No. 4.) After retaining counsel, Plaintiff filed an Amended Complaint on August 14, 2014. (Am. Compl., Docket Entry No. 7.) Defendant moves to dismiss the Amended Complaint. (Def. Mot. to Dismiss, Docket Entry No. 17; Def. Mem. in Support of Mot. to Dismiss ("Def. Mem."), Docket

---

      [1] Plaintiff filed a similar action against the union, Transit Workers Union Local 100-ATU, on the same day, alleging unlawful termination of employment, retaliation and "lack of assistance" in violation of Title VII. *See* Compl., *Edner v. TWU Local 100*, No. 14-CV-580 (E.D.N.Y. 2014). By Memorandum and Order dated May 7, 2014, the Court granted Plaintiff thirty days leave to amend his complaint in that action. (May 7, 2014 Order, Docket Entry No. 5.) Plaintiff never filed an amended complaint and the action was dismissed. (Aug. 25, 2014 Order, *Edner v. TWU Local 100*, No. 14-CV-580, Docket Entry No. 7.)

Entry No. 19.)  For the reasons discussed below, the Court grants Defendant's motion to dismiss the Amended Complaint.  Plaintiff has thirty (30) days to file a second amended complaint.

### I. Background

The allegations in the Amended Complaint are assumed to be true for the purposes of this motion.  On or about November 21, 2010, Defendant NYCTA hired Plaintiff, an African-American of Haitian descent, as a Bus Operator.  (Am. Compl. ¶¶ 11, 13.)  Like all new bus operators, Plaintiff began a six-month "probationary term," during which he was required to show he would be a "satisfactory" Bus Operator.  (*Id.* ¶ 14.)  As part of the probationary term, Plaintiff was subject to supervisory rides known as "Probie Rides."  (*Id.* ¶¶ 16, 39.)

Throughout his probationary period, Plaintiff received poor reviews and discipline for driving accidents and other infractions that, according to Plaintiff, were unfairly characterized and recorded.  During his first "Probie Ride" on March 24, 2011, a NYCTA dispatcher cited Plaintiff for a dress code infraction despite his medical excuse, and cited him for poor driving and judgment although the underlying incidents occurred before Plaintiff's bus was "in service." (*Id.* ¶¶ 16–26.)  Plaintiff's union, Transit Workers Union ("TWU") Local 100, explained to him that if his next "Probie Ride" did not improve, his probationary period would be extended.  (*Id.* ¶ 29.)

Plaintiff was involved in a series of bus accidents.  The first, on April 28, 2011, occurred when a double-parked car reversed into Plaintiff's bus.  (*Id.* ¶¶ 30–32.)  As a result, Plaintiff was re-trained and evaluated, and someone recommended that Plaintiff receive counseling.  (*Id.* ¶ 33.)  Four months later, on September 15, 2011, Plaintiff had another bus accident when a protruding ladder struck Plaintiff's bus as he was executing a turn.  (*Id.* ¶ 34.)  Thereafter, Plaintiff again attended a counseling session on safe bus operation and yielding the right of way.

(*Id.* ¶ 36.)  In addition, the NYCTA and TWU Local 100 agreed that instead of firing Plaintiff, they would extend his probationary period by six months.  (*Id.* ¶ 38.)

On April 8, 2012, Plaintiff had a second "Probie Ride," and again received an unfair report of his performance.  (*Id.* ¶¶ 39–52.)  According to the supervising NYCTA dispatcher, Plaintiff committed driving errors and demonstrated poor judgment, which resulted in a customer, who was in a wheel chair, being unable to ride the bus.  (*Id.* ¶ 40.)  Plaintiff alleges that the dispatcher did not acknowledge that other factors caused these issues, specifically, the presence of a driverless bus crowding the bus stop and vehicles obstructing Plaintiff's view.  (*Id.* ¶¶ 41–51.)

When Plaintiff reported to work on April 13, 2012, he spoke with an "MTA" supervisor, Mr. Kendall, about the "Probie Ride" and the poor report.  (*Id.* ¶ 53.)  Plaintiff tried to explain the discrepancies between the report and what happened, but in response, Kendall stated that Plaintiff's explanations amounted to "an excuse" for "every single thing."  (*Id.* ¶ 54.)  Three days later, Plaintiff returned to Kendall's office with TWU Local 100 representative, Ronald Carter.  (*Id.* ¶ 55.)  Carter reviewed the report, and Kendall asked for Plaintiff's badge, and had him sign a form terminating his position as Bus Operator.  (*Id.*)  Plaintiff alleges he received "no process" and unwillingly signed the form.  (*Id.* ¶¶ 56–57.)

On March 18, 2013, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"), which was duly filed with the EEOC.[2]  (NYSDHR Compl.,

---

[2] Plaintiff's initial *pro se* Complaint attached various documents in support of his claims, including his NYSDHR Complaint and EEOC "Notice of Rights." (Compl. 6, 15–22.)  Plaintiff did not attach these documents to the Amended Complaint, but now submits them with a declaration of his counsel in opposition to Defendant's motion to dismiss. (Wolfson Decl., Exs. B–C.) Defendant also submitted documents, including Plaintiff's NYSDHR Complaint, EEOC Notice of Rights, and Determination and Order after Investigation in support of their motion.

3

annexed to the Declaration of Max Wolfson ("Wolfson Decl.") as Ex. C, Docket Entry No. 16.) The NYSDHR Complaint states that Plaintiff "opposed discrimination" and, "[b]ecause of this, [he was] subject to unlawful discriminatory actions."[3] (NYSDHR Compl. 2.) Plaintiff checked the NYSDHR Complaint's "Retaliation" box, leaving all others blank. (*Id.* at 4.) In the NYSDHR Complaint, Plaintiff recounted his bus accidents and disciplinary reports, and explained how they were unfair characterizations. (*Id.* at 5–8.) Plaintiff also included allegations that at some point near the end of his employment, his boss brought another employee from the same country as Plaintiff to translate from English to Creole, which offended Plaintiff, because his boss knew that Plaintiff could speak and understand English. (*Id.* at 7.)

On September 12, 2013, NYSDHR issued its investigation results, finding no probable cause to believe Defendant engaged in discrimination or retaliation. (NYSDHR Determination and Order After Investigation dated Sept. 12, 2013 ("NYSDHR Determination") 1, annexed to Tapia Decl. as Ex. E.) Thereafter, on October 28, 2013, the EEOC issued Plaintiff his "Notice of Rights." (EEOC Dismissal and Notice of Rights, annexed to Tapia Decl. as Ex. F.)

---

(*See* Decl. of Ricardo Tapia ("Tapia Decl."), Exs. C, E–F, Docket Entry No. 18.) The Court reviews these documents as integral to the Amended Complaint. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991))); *see also L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

[3] The parties submitted identical copies of Plaintiff's NYSDHR Complaint, which totals twelve pages, including the exhibit identification page. However, the NYSDHR Complaint is not consecutively paginated, and the parties' exhibits bear different and, at times, illegible ECF page numbers. As a result, the Court refers to the specific page of the twelve-page NYSDHR Complaint as if the pages were consecutively paginated, beginning with the exhibit identification page as page 1.

## II. Discussion

### a. Standards of Review

#### i. Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it . . . .'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). A plaintiff asserting subject matter jurisdiction has the burden to prove that it exists, and in evaluating whether the plaintiff has met that burden, "'[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010). A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010); *Morrison*, 547 F.3d at 170.

#### ii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011)

(quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Analyzing a motion to dismiss an employment discrimination claim requires reference not only to the pleading standards referenced above, but also the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in which the Supreme Court set forth a burden-shifting scheme that governs a plaintiff's ultimate burden of proof at trial. *Littlejohn v. City of New York*, 795 F.3d 297, 306–309 (2d Cir. 2015) (discussing burden-shifting, citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–55 (1981)). Under that framework, a plaintiff must first establish a *prima facie* case of discrimination. *Hicks*, 509 U.S. at 506; *see also Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11 (2d Cir. 2013); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). The plaintiff's burden at this stage is "minimal." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *Hicks*, 509 U.S. at 506). If a plaintiff meets her burden at this stage, a "temporary presumption" of discrimination arises, and the burden shifts to

the employer to articulate a legitimate, nondiscriminatory reason for the treatment. *Vega v. Hempstead Union Free Sch. Dist.*, --- F.3d ---, ---, 2015 WL 5127519, at *9 (2d Cir. Sept. 2, 2015) (quoting *Littlejohn*, 795 F.3d at 310). If the employer articulates a reason, the burden ultimately shifts back to the employee to show that the employer's reason was pretext. *Id.*

To survive a motion to dismiss, the plaintiff does not need to prove discrimination, or even allege facts establishing every element of the *McDonnell Douglas prima facie* case, but the facts alleged must give "plausible support to the reduced requirements" of the *prima facie* case. *Littlejohn*, 795 F.3d at 311; *see also Vega*, --- F.3d at ---, 2015 WL 5127519, at *9–10; *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))); *see also Awad v. City of New York*, No. 13-CV-5753, 2014 WL 1814114, at *2 (E.D.N.Y. May 7, 2014) (noting that the elements of a *prima facie* case provide an outline of what would make a plaintiff's employment discrimination claim plausible). Thus, a plaintiff need only plead facts to give "plausible support" to plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims. *Vega*, --- F.3d at ---, 2015 WL 5127519, at *9–10 (quoting *Littlejohn*, 795 F.3d at 311).

    **b.   Timeliness of Plaintiff's Title VII claims**

Defendant argues that Plaintiff's Title VII claims are time barred because the underlying discriminatory conduct occurred outside the 300-day period for filing claims with the EEOC or the NYSDHR. (Def. Mem. 8–9.)

"A plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e-5(e)(1)." *Patterson v. Cty. of*

7

*Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004). Under that provision, where "the claimant has already filed the charge with a state or local equal employment agency," the claimant must bring the Title VII claim "within 300 days of the alleged discriminatory action." *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 90 (2d Cir. 2014) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)); *see also Vega*, --- F.3d at ---, 2015 WL 5127519, at *4 (quoting 42 U.S.C. § 2000e-5(e)(1)). This 300-day time period acts as a statute of limitations, *Vega*, --- F.3d at ---, 2015 WL 5127519, at *4; *Patterson*, 375 F.3d at 220, and claims arising from acts that occurred more than 300 days prior to the employee's filing of a charge of discrimination with the EEOC are time-barred, *Pietri v. N.Y.S. Off. of Court Admin.*, 936 F. Supp. 2d 120, 133 (E.D.N.Y. 2013) (citing *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125–26 (2d Cir. 2010) and *Klein v. N.Y. Univ.*, No. 07-CV-160, 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008)).

Here, Defendant fired Plaintiff on April 13, 2012. (Am. Compl. ¶¶ 53–57.) Plaintiff filed his complaint with the NYSDHR on March 18, 2013, making May 22, 2012 the relevant Title VII statute of limitations period. *See Patterson*, 375 F.3d at 220. As a result, claims based on acts occurring prior to May 22, 2012, like Plaintiff's termination, are time-barred. Plaintiff argues that his claims are not time-barred because he is entitled to the benefits of the "continuing violation" exception and equitable tolling. (Pl. Opp'n 11, Docket Entry No. 16.) The Court discusses each below.

### i. Continuing violation exception

Plaintiff argues that because he has alleged that Defendant was "still committing" discriminatory acts against him until he filed his *pro se* complaint in this case, his action is timely. According to Defendant, Plaintiff complains about his termination, which is a discrete

8

act, and therefore the continuing violation doctrine does not apply.

Under the continuing violation exception, if a plaintiff files a timely EEOC charge "as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)). The exception, however, presumes that at least one act was timely challenged within the 300-day period. *See Patterson*, 375 F.3d at 220 ("To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period."); *Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir. 1999) (finding conduct outside the 300-day time period actionable "only if [the plaintiff] could demonstrate that she was subject to a continuous policy and practice of discrimination, and that one act in furtherance of the policy and practice fell within the 300-day period" (citing *Acha v. Beame*, 570 F.2d 57, 65 (2d Cir. 1978)); *Predun v. Shoreham-Wading River Sch. Dist.*, 489 F. Supp. 2d 223, 228 (E.D.N.Y. 2007) ("Essential to application of the continuing violations theory is the allegation of at least one discrete act of discrimination within the 300 day period.").

The continuing violation doctrine will not apply to "discrete acts" of discrimination, even if they are "related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Chin*, 685 F.3d at 155–57 (discussing *Morgan*). Such discrete acts include termination, disparate disciplining, and negative performance evaluations. *See Morgan*, 536 U.S. at 114; *Valtchev v. City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010) (affirming the district court's finding that the plaintiff's negative evaluations and disciplinary proceedings were only discrete acts that did not trigger the continuing violation

exception); *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 212 (E.D.N.Y. 2014) ("The allegedly discriminatory 'unsatisfactory' rating for the 2011–2012 school year is a discrete act occurring before January 31, 2013." (citing *Valtchev*, 400 F. App'x at 589); *Bright v. Coca Cola Refreshements USA, Inc.*, No. 12-CV-234, 2014 WL 5587349, at *13 (E.D.N.Y. Nov. 3, 2014) ("Each of these claims is a discrete act to which the continuing violation doctrine cannot apply. This includes his performance reviews from before 2009, even though Nunez claims that reviews that occurred since 2009 were also discriminatory."); *Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 587 (S.D.N.Y. 2014) (finding that in a § 1983 discrimination suit, the continuing violation doctrine did not apply to allegations that defendants, among other things, falsely accused the plaintiff of poor performance and subjected her to "unwarranted disciplinary hearings" because there were "merely several discrete acts"), *appeal dismissed* (Apr. 9, 2014); *Pietri*, 936 F. Supp. 2d at 134 (denial of promotions, being subjected to disparate discipline and denial of transfer opportunities "are all discrete acts of discrimination and each incident 'constitutes a separate actionable unlawful employment practice'" (citing *Morgan*, 536 U.S. at 114) (additional internal quotation marks omitted)); *Aiello v. Stamford Hosp. Inc.*, No. 09-CV-1161, 2010 WL 3925451, at *4 (D. Conn. Sept. 29, 2010) ("To the extent the Plaintiff alleges a cause of action pursuant to Title VII, the Plaintiff alleges discrete acts as opposed to repeated conduct, as he identifies specific dates upon which he believes he was inappropriately disciplined."). If these discrete acts "fall outside the limitations period, [they] cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin*, 685 F.3d at 157.

Here, although Plaintiff seeks the benefit of the continuing violation exception, he does not allege discriminatory acts within the 300-day time period warranting the exception.

Defendant fired Plaintiff on April 13, 2012 — in excess of the 300-day period — and there are no allegations that additional discriminatory conduct occurred after that date. Although Plaintiff's first Complaint noted that Defendant was "still committing" acts of discrimination against him on January 24, 2014, there are no facts supporting that assertion. Indeed, both Plaintiff's disparate treatment and failure to promote claims arise from his April 13, 2014 firing.

In addition to being outside the 300-day time period required for the exception, Plaintiff's termination and the failure to promote him are also discrete acts that are not entitled to the continuing violation exception. *See Morgan*, 536 U.S. at 114. To the extent Plaintiff relies on Defendant's various reprimands or negative performance reviews, these are also discrete acts, *see Valtchev*, 400 F. App'x at 589; *Pietri*, 936 F. Supp. 2d at 134, and Plaintiff alleges no facts suggesting that these acts were in furtherance of a discriminatory policy or practice of discriminating against Haitian employees or that they occurred within the 300-day period, *see Bartoli v. City of New York*, No. 09-CV-4163, 2010 WL 1539055, at *4 (E.D.N.Y. Apr. 19, 2010) (Although "plaintiff argue[s] that the defendant's otherwise time-barred conduct forms part of a single 'pattern and policy' . . . . [plaintiff must] establish 'more than sporadic acts of discrimination; rather, [he] must establish that intentional discrimination was the defendant's standard operating procedure.'" (third alteration in original) (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 153 (2d Cir. 2001)). Likewise, although Plaintiff asserts in the Amended Complaint that even today, he "continues to suffer" various harms, "a continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *Ruane v. Cty. of Suffolk*, 923 F. Supp. 2d 454, 460 (E.D.N.Y. 2013) ("[T]he mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing violation."

11

(quoting *Blankman v. Cty. of Nassau*, 819 F. Supp. 198, 207 (E.D.N.Y. 1993))). Accordingly, Plaintiff's time-barred claims are not saved by the continuing violation exception.

### ii. Equitable tolling

Nor has Plaintiff shown that he is entitled to equitable tolling. Equitable tolling may apply where, among other reasons, the plaintiff "was unaware of his or her cause of action due to misleading conduct of the defendant." *Grys v. ERIndustrial Sales, Inc.*, 553 F. App'x 61, 62 (2d Cir. 2014) (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)). "Equitable tolling is also proper where the plaintiff has shown that she: '(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" *Id.* (quoting *Zerilli-Edelglass*, 333 F.3d at 80); *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010).

Equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Baroor v. N.Y.C. Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) (quoting *Zerilli-Edelglass*, 333 F.3d at 80); *Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007) ("Equitable tolling applies only in the rare and exceptional circumstance." (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000))). Where a plaintiff "is unaware that he has a cause of action because of defendant's fraudulent acts or concealment," equitable tolling will apply. *Bennett v. U.S. Lines, Inc.*, 64 F.3d 62, 66 (2d Cir. 1995). However, where a non-defendant third party engages in such fraud or misleading conduct, the doctrine's application is less clear. *See Hannah v. Wal-Mart Stores, Inc.*, 969 F. Supp. 2d 229, 233 (D. Conn. 2013) (noting that "[t]here is some debate within the Second Circuit as to whether misleading conduct must have been at the hands of the defendant or whether misconduct by a third-party could make equitable tolling appropriate").

12

Some district courts in this circuit have found a non-defendant's misleading conduct insufficient to warrant equitable tolling. *See Richardson v. Suffolk Bus Corp.*, No. 09-CV-3586, 2010 WL 2606266, at *6 n.5 (E.D.N.Y. June 22, 2010) ("[T]here is no legal support for the argument that false representations by any one other than defendant will result in equitable tolling."); *Miller v. Potter*, No. 07-CV-1767, 2007 WL 4615611, at *4 (E.D.N.Y. Nov. 29, 2007) ("[E]ven assuming he erroneously relied on statements by union representatives, there is no basis for equitable tolling because there is no allegation that his employer actively misled him in any way."). However, the Second Circuit and other district courts have at least considered third-party deception in determining whether to apply equitable tolling. *See Lomako v. N.Y. Inst. of Tech.*, 440 F. App'x 1, 3 (2d Cir. 2011) ("[Plaintiff's] assertion that his union and the defendants intentionally misled him for the purpose of preventing him from filing a complaint with the DHR or EEOC is vague and conclusory and does not suggest a plausible basis for equitable tolling."); *Cherry v. City of New York*, 381 F. App'x 57, 59 (2d Cir. 2010) ("Appellant's only argument in favor of equitable tolling is that he was misled by his union and/or DOC. . . . [but] he has not asserted, much less established, that extraordinary circumstances justify application of the equitable tolling doctrine."); *Simmons v. Moodt*, 36 F. App'x 676, 678–79 (2d Cir. 2002) (remanding for determination as to whether third-party civil rights agency misled the plaintiff, warranting equitable tolling); *Ramos v. N.Y.C. Dep't of Corr.*, No. 05-CV-223, 2006 WL 1120631, at *5 n.4 (E.D.N.Y. Apr. 26, 2006) ("Plaintiff has not put forth any evidence that DOC or his union actively misled him about applicable EEOC filing deadlines.").

Here, Plaintiff argues in conclusory fashion that his union misled him, causing him to miss the deadline to file his claims. However, the Amended Complaint contains no facts about misleading interactions with the union — such as who misled Plaintiff, how Plaintiff was misled,

13

or when this occurred. Indeed, Plaintiff first raised the issue in his opposition to Defendant's motion to dismiss. Similarly, there are no allegations that Defendant misled Plaintiff in any way. Therefore, based on the allegations in the Amended Complaint, the Court cannot find that Plaintiff's time-barred claims were equitably tolled.

Because Plaintiff's claims are time barred, they are dismissed.

### c. Plaintiff's NYSHRL claim

Defendant argues that the Court lacks jurisdiction over Plaintiff's NYSHRL claim because Plaintiff previously filed a NYSDHR complaint based on the same conduct at issue in this case. (Def. Mem. 23–25.) Plaintiff asserts his current NYSHRL claim "is exempt from the jurisdictional bar because it is not the same claim as that alleged in Plaintiff's complaint with the NYSDHR." (Pl. Opp'n 27.)

Under the NYSHRL, an individual who files a complaint with the NYSDHR is jurisdictionally barred from filing a lawsuit in state or federal court for the same cause of action. *See* N.Y. Exec. Law § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person had filed a complaint hereunder or with any local commission on human rights."); *Waller v. Muchnick, Golieb & Golieb, P.C.*, 523 F. App'x 55, 56 n.1 (2d Cir. 2013) ("Under New York law, a litigant who files a claim with the NYSDHR cannot bring the same claim in federal court; the District Court, therefore, properly concluded that it lacked jurisdiction over plaintiff's claims arising out of New York state and city law.").

"So long as 'substantially the same facts are involved, . . . the doctrine of election of remedies will bar any subsequent court proceedings. The facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the

application of the doctrine of election of remedies.'" *DeBerry v. Brookdale Univ. Hosp. & Med. Ctr.*, 11 F. Supp. 3d 387, 392 (E.D.N.Y. 2014) (alteration in original) (quoting *Benjamin v. N.Y.C. Dep't of Health*, No. 102211/06, 2007 WL 3226958, at *5 (N.Y. Sup. Ct. Oct. 23, 2007), *aff'd*, 870 N.Y.S.2d 290 (App. Div. 2008)); *Petty v. City of New York*, No. 10-CV-8581, 2014 WL 6674446, at *15 (S.D.N.Y. Nov. 25, 2014) ("The election of remedies bar . . . precludes consideration of any claim — whether brought under the NYSHRL or the NYCHRL — arising out of the same incident on which [Plaintiff's] [NY]SDHR complaint was based." (first and second alterations in original) (quoting *Higgins v. NYP Holdings Inc.*, 836 F. Supp. 2d 182, 188 (S.D.N.Y. 2011)), *reconsideration denied*, 2014 WL 7250945 (S.D.N.Y. Dec. 22, 2014); *Thorpe v. Piedmont Airlines, Inc.*, 926 F. Supp. 2d 453, 460 (N.D.N.Y. 2013) ("[W]hen a plaintiff chooses to file a complaint with the NYSDHR, such filing constitutes an election to proceed in an administrative forum and such election bars a subsequent judicial course of action on the same facts."); *Borum v. Vill. of Hempstead*, 590 F. Supp. 2d 376, 383 (E.D.N.Y. 2008) ("The jurisdictional bar is not avoided by changing the legal theory of relief relied upon," and "a litigant cannot split claims and assert some in court and others before an agency if they all arise out of the same course of conduct." (citations and internal quotation marks omitted)).

Contrary to Plaintiff's claim, the NYSDHR Complaint addresses the same incidents underlying the Amended Complaint.[4] The NYSDHR Complaint describes Plaintiff's unfair

---

[4] In response to Defendant's argument that Plaintiff's disparate treatment and failure to promote claims should be dismissed for failure to exhaust administrative remedies, Plaintiff makes the contrary argument. Plaintiff asserts that he has exhausted his administrative remedies even though he only claimed retaliation in his NYSDHR Complaint because his claims in the Amended Complaint are similar to those raised in his NYSDHR Complaint. *See Tanvir v. N.Y.C. Health & Hosps. Corp.*, 480 F. App'x 620, 621 (2d Cir. 2012) ("[A] claim that was not presented to the EEOC [or NYSDHR] may still be pursued where the claim is 'reasonably related' to the claims that were brought before the agency.").

treatment arising from, among other things, the dress code infraction, the evaluations of his bus accidents, the extension of his probationary period, and Plaintiff's termination. (NYSDHR Compl. 8–9.) The NYSDHR Complaint also appears to allege discrimination on the basis of national origin, as it describes Plaintiff having been offended when his boss had another Haitian employee translate from English to Creole for Plaintiff, despite his boss' knowledge that although Plaintiff had a French accent, Plaintiff had no difficulty communicating with him in English. (*Id.*) Plaintiff relies on these incidents and allegations in his Amended Complaint as well. As a result, the Court has no jurisdiction over Plaintiff's NYSHRL claims, as Plaintiff elected to bring those claims before the NYSDHR. Accordingly, the Court dismisses Plaintiff's NYSHRL claims with prejudice.

### d. Leave to amend

The Amended Complaint alleges race and national origin discrimination in violation of Title VII, but fails to sufficiently allege that Plaintiff's claims are timely. Although Plaintiff asserts that any filing delay resulted from his union misleading him, the Amended Complaint contains no allegations concerning his union or employer's misleading conduct. Additionally, the Court notes that the Amended Complaint differs from both Plaintiff's initial *pro se* Complaint and his prior NYSDHR Complaint in various ways, and contains few allegations regarding Defendant's disparate treatment and its connection to Plaintiff's race and national origin.

Although Plaintiff is no longer *pro se*, the Court will grant Plaintiff leave to file a second amended complaint. Plaintiff is informed that if he elects to file a second amended complaint, he must allege how his claims are timely. Once a second amended complaint is filed, it will completely replace the prior Amended Complaint and any prior allegations. Therefore, the

16

second amended complaint must contain *all* necessary information — allegations, documents, and exhibits — set forth or attached to the prior Amended Complaint or any other complaint. The second amended complaint must be captioned "Second Amended Complaint," and it must bear the same docket number as this Memorandum and Order.

### III. Conclusion

For the foregoing reasons, the Court dismisses Plaintiff's NYSHRL claims against Defendant with prejudice. The Court also dismisses Plaintiff's Title VII claims, but grants Plaintiff leave to file a Second Amended Complaint as to these claims.

SO ORDERED:

     s/MKB
MARGO K. BRODIE
United States District Judge

Dated: September 18, 2015
      Brooklyn, New York